## Chadwick Estate

*Patrick C. Derrico*, for accountant.

*Sherman H. Siegel*, for claimant.

MARINO, P. J., June 17, 1964.—The audit of the first and final account in this estate was called at the regular audit session of the court on March 19, 1964. The audit was ordered closed, but accountant had some minor items to adjust, consequently the court did not render an adjudication thereon, nor a decree of distribution. On April 23, 1964, Sigel D. Tennant petitioned to open the audit and permit him to present proof of a claim he had neglected to file during the time required by law and by court rules. A rule was issued on the accountant to show cause why the same should not be opened. On the return day, accountant appeared, having filed no answer to the petition, and requested the court to fix a hearing date. As the court interprets accountant's actions, it is not objecting to the opening of the audit under the circumstances. Mr. Tennant, claimant, is of advanced age, and hard of hearing. He knew of decedent's death, as he attended the funeral. He did not know who the executor was, nor did he have any recollection of seeing any estate notice in the newspapers. He was informed by a brother of decedent that the estate assets exceeded $100,000 so he felt no urgency to present his claim on the note, particularly if the interest continued to accumulate, as he believed it would in a solvent estate.

As no distribution had yet been ordered, the court permitted the audit to be opened and claimant to present testimony in support of his claim as a creditor in the estate.

The claim is based on a written instrument, a promissory judgment note under seal. It is dated September 22, 1962, in the amount of $1,000, payable on demand. It was proved by adequate evidence that the maker was Earl Chadwick, decedent, and payee was Sigel D. Tennant.

Claimant, after proving the note, and the genuineness of the maker's signature, offered it in evidence, and rested. Accountant did not attempt to controvert the testimony of claimant's witnesses, as to validity of the note, nor to show any payment; but it did show that the claim was not presented in the due course of administration of the estate.

The transaction is governed by the Uniform Commercial Code, Act of April 6, 1953, P. L. 3, 12A PS §1-101 et seq. The pertinent section, section 3-307(2) provides: "When signatures are admitted or established, production of the instrument entitles a holder to recover on it unless the defendant establishes a defense."

Claimant, payee of the negotiable instrument, is the holder and contends he is entitled to recover. Although subsection 1(b) of section 3-307, supra, negatives the presumption that the signature is genuine where the maker has died (as in the case at bar), claimant did not rely on such presumption but proved the signature by the witness whose name appeared on the note, one Hazel Hopkins.

Since this claim is based upon a negotiable promissory note under seal, it partakes of all the perquisites of a sealed instrument. It was early decided that a seal *imports* consideration: Grubb v. Willis, 11 S. & R. 107. Such is not a mere presumption; the seal actually takes the place of proof of consideration and, in the absence of proven fraud, makes the tenor of the instrument enforceable without it. The defense of *want of consideration* is unavailable in an action on a sealed instrument: Yard v. Patton, 13 Pa. 278.

But *failure of consideration*, nevertheless, is a sound defense even to a sealed instrument, negotiable or otherwise. The distinction between want and failure of consideration has been demonstrated quite frequently. It is succinctly pointed out in Killeen's Estate, 310 Pa. 182, at 187, where the court said: "There is, however, a distinction between want and failure of consideration: want of consideration embraces transactions or instances where none was intended to pass, while failure of consideration implies that a valuable consideration, moving from obligee to obligor, was contemplated: Meek v. Frantz, 171 Pa. 632. Want of consideration is no defense, as this would contradict the terms of the instrument, while failure of consideration does not contradict the terms of the instrument, but shows that the consideration contemplated was never received."

Accountant has not attempted to show failure of consideration, the only defense open to it under the circumstances. Claimant rests on its prerogatives under the Uniform Commercial Code, after having proved the note and the genuineness of decedent's signature as maker. He goes no further, and with sound reason. He might easily jeopardize his claim in so doing, for if he anticipates a possible defense, and attempts himself to prove that there is consideration, he thereby accepts that onus and relieves accountant of the burden of proving failure of consideration. See Calanno's Estate, 14 D. & C. 2d 153 (1958) ; Conrad's Estate, 333 Pa. 561; Tate v. Connor, 184 Pa. Superior Ct. 427.

In Pennsylvania, sealed instruments have long been recognized as being of especial validity. The presence of the seal is not only presumptive evidence of consideration, but fully imports a valuable consideration: Balliet v. Fetter, 314 Pa. 284. Want of consideration is no defense: Piper v. Queeney, 282 Pa. 135. When

the note is in payee's possession, there is a presumption of delivery. While execution is not presumed in the case of a deceased maker, we are not here confronted with that problem, as execution of this note was fully and adequately proved.

As has been pointed out, failure of consideration is always available as a defense to a sealed instrument: Conrad's Estate, 333 Pa. 561. "Though a sealed promise is binding without consideration where no consideration is bargained for, most sealed promises like unsealed promises are not intended to be given gratuitously but in exchange for a consideration, and failure of consideration, that is, failure to receive the intended exchange, must be sharply distinguished from lack of consideration": 1 Williston, Contracts, §109.

The question in the case at bar is whose duty it becomes to prove consideration, or failure of consideration. While such duty generally devolves upon the holder of a promissory note, especially when the maker is deceased, the rule is changed when the holder has proved the execution of the note by decedent (as he has done in the subject case) and the promissory note is under seal. Under such circumstances, the holder has no burden of proof, other than that cast upon him by the Uniform Commercial Code. This burden he has successfully met. Accountant has been unable to show failure of consideration. In fact, it might almost be said that such was not even attempted, as the only person interrogated about the relevant circumstances surrounding the execution of the note was the person who signed as a witness, and she readily testified that she knew nothing of this feature.

Having disposed of the matter of proof of consideration, we now turn to the next inquiry. Is there any proof that the note has not been paid, either in part or in full?

Long before the Negotiable Instruments Law be-

came effective in Pennesylvania in 1901 (and of course the present Uniform Commercial Code) it had been uniformly held that, "The possession of an instrument in writing for the payment of money affords proof, prima facie, of a right in holder to recover upon it according to its terms. Holder is not required to prove that it has not been paid. His case is made by his production of the instrument in the first instance, and the burden of showing payment is on him who alleges it": Whitney v. Hopkins, 135 Pa. 246, 255.

Since accountant has made no effort to show payment, either in whole or in part, we decide that holder of this note is entitled to recover thereon, as to the full amount of the principal.

One problem remains: where holder of a note does not present it for payment within a reasonable time after the death of the maker, stating that he prefers to make his claim at a later date, and assuring himself that legal interest on same would be vouchsafed him with gross assets of the estate in excess of $100,000, is it proper to allow full interest on the claim when it was necessary for the court to open the audit of the final account in order to permit the holder of the note to prove his claim? We think not. We cannot reward claimant for his laxity in pursuing his legal remedy. To do so would be to encourage such action on the part of claimants generally, and seriously impede the orderly settlement of decedents' estates.

Normally, interest would accrue in a solvent estate from date of the note to date of final award. Interest follows the debt: Sims v. Willing et al., 8 S. & R. 102, 109. Interest from the date of a demand note to the date of payment is proper: Reber's Estate, 143 Pa. 308. Section 17(2) of the Negotiable Instruments Law is in accord. The matter of interest on demand notes is now covered by section 3-118(d) of the Uniform Commercial Code, which provides: "Unless otherwise specified

a provision for interest means interest at the judgment rate at the place of payment from the date of the instrument, or if it is undated from date of issue."

The subject note does provide for interest (not specifying the rate), and the note is dated September 22, 1962. The judgment rate at the place of payment is six percent per annum. But because of the matters hereinbefore stated, we will not allow interest beyond the usual time for filing a decree, had the claim been timely made.

In the instant proceeding, we will allow interest only until April 1, 1964. A schedule of distribution in conformity herewith is ordered.